# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Consumer Financial Protection Bureau,   Case No. 17-cv-00166-PAM-DTS

      Plaintiff,

vs.

TCF National Bank,   **Defendant TCF National Bank's Opposition to Plaintiff's Motion to Amend the Scheduling Order**

      Defendant.

      The Consumer Financial Protection Bureau's Motion to Amend the Scheduling Order should be considered in the context of the Bureau's three-year pre-suit investigation, TCF's enormous, ongoing efforts to provide information to the Bureau in the course of this proceeding, and the Bureau's refusal to provide basic discovery on its pending claims as it ponders developing new ones while running out the clock on fact discovery.  After three years of obtaining hundreds of thousands of pages of TCF documents and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ the Bureau's investigation culminated in a lawsuit, and then an amended complaint focusing on allegedly deceptive and abusive opt-in procedures which the Bureau has alleged resulted in an "Opt-In rate [that] was more than triple the average Opt-In rate at other banks."  FAC, Dkt. 34 ¶ 5.  The case is nearing its fifth month of fact discovery (which is currently scheduled to end on June 1, 2018) and TCF has continued to provide vast quantities of data and documents even through the holidays.

1

While the amended complaint identifies general themes in its criticism of TCF's opt-in procedures, this is hardly adequate to prepare for trial, thus leading to TCF's request for a fuller explanation through a 30(b)(6) deposition—a request that has been stymied by the Bureau's insistence that it is not obligated to seat such a witness when it brings an enforcement action. Once TCF receives this information, it must then use it to formulate appropriate follow-up discovery and then conduct the discovery *all in the next 90 days*. The Bureau, by contrast, has now had over four years of ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ discovery to prepare its case.

As TCF approaches the end of fact discovery, the Bureau, instead of providing discovery on the two core elements of its four-year old case—namely, a 30(b)(6) deposition and the disclosure of comparator data that it and its former Director claimed proved its case—now wants to move off (or at least think about moving off) in a different direction. The proffered justification for asking for additional time is its claim that the Bureau has only now discovered that TCF customers could "swipe negative" and "settle positive" if they made or received an intervening deposit before their transaction settled, and that this commonplace feature somehow might provide a basis to assert a claim in a further amended complaint at some time in the future.

Frankly, the entire course of conduct by the Bureau is shocking and a private litigant would not have the audacity to suggest it. The Bureau has had the benefit of four years of discovery from TCF, has provided almost nothing in response to TCF's requests (unless the Court counts the re-production of TCF's original CID productions to the Bureau), and is slow-walking everything else to try to get to the end of fact discovery

without ever having to show its cards. More than that, it is now allegedly discovering facts that were disclosed to it years ago and deciding that those facts, upon further reflection, perhaps warrant (it evidently cannot yet decide) adding new claims.

The motion to extend deadlines should be summarily denied. The Bureau should be directed to devote its efforts to provide the discovery required to prove its case and leave TCF a decent amount of time to conduct its own discovery. After four years of discovery from TCF, it is not too much to ask that TCF have at least a month or two after the Bureau has fulfilled all of its discovery obligations to prepare for trial.

Let us focus upon the notion that the Bureau's discovery obligations should be deferred in light of allegedly "***newly discovered*** potential claims" about TCF's "swipe negative/settle positive" sales practices. Pl's Mem. of Law Supp. Mot to Amend ("CFPB Mem."), Dkt. 162, at 1 (emphasis added). There is nothing new here. In fact, TCF has produced documents on this issue to the Bureau repeatedly over the past four years. ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ it clearly focused on the issue in early 2017 when drafting its complaint and amended complaint, *see infra* at 10–11. This is further confirmed by the fact that the Bureau actually argued this issue before Judge Kyle in June 2017 in connection with TCF's motion to dismiss. *See infra* at 11.

Because the Bureau unquestionably obtained documents, information, and even testimony about "swipe negative/settle positive" during its lengthy pre-suit investigation, and raised it in both complaints and at oral argument last year, its Motion falls well short of the necessary good cause. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir.

3

2001) ("As a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them."). Moreover, allowing the Bureau to amend its complaint at this late stage would unduly prejudice TCF by delaying the resolution of the matter. The Motion should be denied.

## BACKGROUND

The Bureau submits that it may amend its complaint on some unknown future date to add a claim about "swipe negative/settle positive." "Swipe negative/settle positive" is a feature TCF customers use more than ▮▮▮▮▮ times on average each month. This feature allows an opt-in customer to overdraw her account ("swipe negative") without a fee so long as the account has sufficient funds to cover the transaction by the time the transaction settles ("settle positive"), typically within a day or two of the original transaction. This feature exists industry-wide and has long been known to federal regulators; it was even referenced nine years ago in the Federal Register's publication of the final rule amending Regulation E. *See* Board of Governors of the Federal Reserve System, Electronic Fund Transfers, 74 Fed. Reg. 59033, 59041 (2009) (final rule; official staff commentary) (observing "some transactions that are authorized into overdraft settle into good funds and do not result in overdraft fees"). Customers who decline to opt in have their purchases denied even if they expected to make or receive a deposit before the transactions settled.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4

███████████████████████████████████████████████  ███

█████████████████████████████████  █████████████████

█████████████████████████████████████████████

████████  Likewise, the Bureau referenced "swipe negative/settle positive" in both of its complaints and during oral argument on the Motion to Dismiss the Amended Complaint.

Yet, repeatedly professing its diligence, the Bureau claims that it "***first sought discovery*** regarding the 'swipe negative, settle positive' representations in requests for production to TCF served ***on November 1, 2017***," *id.* at 3 (emphasis added), and that it "***has not yet received discovery*** relating to the 'swipe negative, settle positive' representations," *id.* at 4 (emphasis added). That contention is wholly contradicted by the record. The Bureau possessed more than enough information to evaluate a possible claim about TCF's sales practices surrounding "swipe negative/settle positive" when it first filed this action, and certainly by the February 16 deadline set forth by the Court last year.

## ARGUMENT

### I. The Bureau's Lack of Diligence Defeats Good Cause

"Swipe negative/settle positive" is not a novel topic or subject of inquiry in this action or in the exhaustive three-year investigation that preceded it. This history and the Bureau's lack of diligence preclude it from establishing the "exacting" good cause necessary to support an extension. *Target Corp. v. LCH Pavement Consultants, LLC*, 960 F. Supp. 2d 999, 1006 (D. Minn. 2013). "The focus of this exacting test is on the

diligence with which the moving party attempted to comply with the scheduling order's deadlines, and not on the prejudice to the non-moving party.  Ultimately, in applying Rule 16(b) to the circumstances presented here, the Court asks whether the moving party (i.e., [the Bureau]) has demonstrated that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (citations, alterations, and internal quotation marks omitted).  "Where[, as here,] there has been no change in the law, no newly discovered facts, or any other changed circumstance after the scheduling deadline for amending pleadings, then [the Court] may conclude that the moving party has failed to show good cause." *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (alteration and internal quotation marks omitted).

The Bureau contends that good cause exists to extend the deadline for amending its complaint because it needs time to "assess newly discovered potential claims."  CFPB Mem. at 1.  Controlling precedent squarely defeats this argument.  A party may not establish good cause to amend its pleading after the deadline based "on documents [it] has had in its possession for several years.  This earlier-available information cannot be relied upon in meeting the good cause standard." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA, v. Donaldson Co., Inc.,* No. 10-CV-4948 (JRT/TNL), 2016 WL 6902408, at *2 (D. Minn. June 15, 2016); *see Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, No. CIV. 09-1091 JNE JSM, 2010 WL 4193076, at *6 (D. Minn. Oct. 7, 2010) ("[A] party does not meet the good cause standard under Rule 16(b) if the relevant information on which it based the amended claim was available to it earlier in the litigation.").

The CFPB would have the Court believe that it only just learned about "swipe negative/settle positive" and that TCF "has stalled [the Bureau's] efforts" to "gather the discovery necessary to assess whether TCF's sales practices surrounding 'swipe negative, settle positive' campaign are actionable." *See* CFPB Mem. at 6.  It thus contends that TCF's failure to produce requested discovery establishes good cause.

The Bureau's position is belied by the factual history of this enforcement action.



███████████████████████████████████ To the extent that TCF marketed the "swipe negative/settle positive" feature of opting in, it would have been apparent in these documents.

███████████████████████████████████

████████████████████████

████████████████████████████

███████████████████████████████
████

███████████████████████████████
████

███████████████████████████████
███████████████████████████████
███████████████████████████

███████████████████████████████
███████████████████

███████████████████████████████
███████████████████████████████
███████████████████

███████████████████████████ ██████████

███████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████



███████████. Yet, years later, it tries to rewrite history, claiming, for instance, that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Despite the Bureau's intimations that TCF is hiding something, *the Bureau received the exact information it sought*. Although the actual spreadsheet reflecting the 2009 study no longer existed when the Bureau requested it years later, the query and the underlying data were saved. T. Schoen Decl. ¶ 7. ████████████████████████

9



Astonishingly for a motion seeking an extension of time to file a motion to amend its complaint, the Bureau even referenced "swipe negative/settle positive" in both its original and amended complaints. *See* Compl. Dkt. 1, ¶ 93 (quoting a script that stated, "typically we find that customers whose check card transactions are authorized when they [do] not have enough available funds do have sufficient funds when the transaction posts

to the account" (alteration in original)); First Am. Compl., Dkt. 34, ¶ 93 (same). Its counsel also addressed this subject during oral argument on TCF's motion to dismiss:

> [T]hey say, [w]ell, people can swipe negative and settle positive. So a working person could swipe the card knowing they don't have enough money to cover it, but hoping, gambling in effect, that the transaction, their paycheck is going to hit in time for it to settle without incurring an overdraft fee. That is pure gambling on the consumer's point. They have no idea if that's going to work or not. You know, some days they may get lucky and settle positive and other days they may not and they will get hit with multiple fees because of their purchases.

R. Scarborough Decl. ¶ 17; Mot. Hr'g Tr. (June 14, 2017), Dkt. 81, at 28:20–29:4.

████████████████████████████████████████

████████████████ the Bureau affirmatively did not assert such a claim.

Perhaps the Bureau has decided, as a tactical decision, that it does not want to (or cannot) provide discovery to support the allegations in its first two complaints, and now wants to distract attention from that failure by conjuring up supposedly new claims. That does not amount to good cause. *See Hartis*, 694 F.3d at 949 ("This tactical decision is fully the Hartises' prerogative, but it hardly constitutes good cause for an extremely tardy pleading-amendment motion."); *Whelan v. Golden Shovel Agency, LLC*, No. 14-CV-365 (MJD/LIB), 2015 WL 13632433, at *4 n.4 (D. Minn. May 1, 2015) ("It is not good cause to allow the present re-amendment simply because Plaintiff's new lawyer disagreed with a litigation strategy Plaintiff's prior lawyer pursued with Plaintiff's direct knowledge and participation.").

Even if the Court were to restrict its analysis to the Bureau's conduct during this civil action, that conduct has not evinced the diligence necessary to establish good cause. To establish good cause, the Bureau "has to address its diligence—i.e., it has to answer the questions of what it did to obtain the information within the deadline and why it was not possible for it to have known the information until later." *Target Corp.*, 960 F. Supp. 2d at 1007.

The Bureau has not answered these questions. The Bureau has not noticed—much less taken—a single deposition since it filed this lawsuit. And it served only one set of Requests for Production inquiring about the basis for counsel's "swipe negative/settle positive" representations in its motion to dismiss submissions to the Court. This is particularly significant given that neither of the requests for production the Bureau highlighted in its motion seeks documents about TCF's sales practices like training materials or marketing materials that would form the basis of the Bureau's supposed new claim.[1] Because the Bureau already possesses TCF's marketing and training documents from its pre-suit investigation, any request for such documents would be duplicative. R. Scarborough Decl. ¶¶ 2, 25.

---

[1] *See* Martikan Decl., Ex. 2 (seeking in Request Number 36, "All documents supporting your assertion at pages 6–7 [of TCF's brief] that TCF does not charge a fee 'when the customer swipes his card to authorize his transaction his account does not have sufficient funds, but sufficient funds are deposited into the account before TCF pays, or 'settles,' the transaction a day or two later.'"; seeking in Request Number 38, "All documents referencing or relating to the "swipe negative/settle positive policy referenced at page 7 [of TCF's brief]").

No novel circumstance or recent discovery warrants extending the deadline. In view of the documents and information already in the Bureau's possession as a result of TCF's pre-suit productions and the Bureau's investigation, there is only one outstanding item that still remains to be produced in response to the Bureau's requests for production pertaining to "swipe negative/settle positive." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Such data—from years after the allegations in the Bureau's amended complaint—has no bearing upon the Bureau's ability to evaluate a claim about TCF's "sales practices" in the 2011 to early 2014 time period. TCF is not aware of any other responsive materials related to "swipe negative/settle positive" that were not already produced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. R. Scarborough Decl. ¶ 25.

Moreover, to the extent the Bureau speculates that the forthcoming production will offer additional or better support for a claim about sales practices, no different result is warranted. "[N]othing requires a plaintiff seeking such an amendment to await receipt of the 'strongest' or 'best' evidence to support his motion." *Weber v. Travelers Home & Marine Ins. Co.*, 801 F. Supp. 2d 819, 831 (D. Minn. 2011). This would be true even if TCF had resisted or delayed production for the Bureau's relevant discovery requests (it has not). The Eighth Circuit has made plain that when a party "kn[o]w[s] of the claims [it] sought to add" in its amendment "when [it] filed the original complaint," a district

13

court does not abuse its discretion in denying leave to amend for lack of good cause even if the nonmovant "did not timely comply with some discovery requests." *Barstad v. Murray Cty.*, 420 F.3d 880, 883 (8th Cir. 2005).

Throughout this litigation, TCF has worked to satisfy the Bureau's requests for expedited production of certain documents. For instance, when the Bureau requested expedited production of account-level data, TCF worked during the holidays to respond to the Bureau's request on a priority basis. R. Scarborough Decl. ¶¶ 19, 20. TCF initiated bi-weekly document productions on January 12, 2018, which had been planned even before TCF received the Bureau's January 12, 2018 letter, Martikan Decl., Ex. 4; R. Scarborough Decl. ¶ 21, Ex. 9. The first and only time the Bureau asked TCF to prioritize documents related to "swipe negative/settle positive" was February 8, 2018—just one week before filing this motion. Martikan Decl. ¶ 9. In all, the Bureau's belated focus on "swipe negative/settle positive"—despite possessing relevant information and documents for years—does not demonstrate the diligence required to establish good cause.

## II.   TCF Would Be Prejudiced By an Amendment

The Court set a trial-ready date of December 1, 2018, yet the Bureau has repeatedly stonewalled TCF's efforts to move forward with discovery. It has categorically refused to seat a Fed. R. Civ. P. 30(b)(6) witness to testify about the factual bases for the Bureau's claims in its amended complaint, and has refused to provide (or withdraw allegations based on) comparator evidence in its possession. Now with this latest gambit just over three months before the close of fact discovery, the Bureau wants

more time to decide whether to assert a new claim based on evidence that it has known about since 2014.[2]

As this Court has stated, "[l]itigants know the schedule on which their cases will progress, what their obligations will be throughout the life of those cases, and, most importantly, when they can reasonably expect their lawsuits to come to an end. Courts honor those expectations when courts require a party to show that it has acted diligently in complying with the schedule." *Target Corp.*, 960 F. Supp. 2d at 1007. The Bureau's request for an indefinite extension to amend prejudices TCF's ability to make strategic decisions about the litigation and its discovery. TCF should not be forced to choose between dealing with a new claim during a truncated fact discovery period and requesting an extension that pushes out the trial-ready date. After four years of investigation and litigation, TCF deserves certainty with regard to the claims against which it must defend. What the Bureau is really seeking here is a "do over" where the parties repeat the complaint, motion-to-dismiss, and answer phases. This would almost certainly compel the Court to issue a new scheduling order as if the case began in April 2018, when in fact the case began in January 2017. The Court should require a showing far more compelling than the one the Bureau has presented here before it goes down this path.

---

[2] Worse yet, the Bureau's motion does not even provide a specific date by which it asks this Court to hold open the deadline. Instead it seeks 15 days from the date this Court rules on a motion it has yet to file, and may never file. For this reason alone, the Court should deny the motion. The CFPB should not be granted unfettered discretion in extending the deadline to amend based on when *it chooses* to bring the motion.

**CONCLUSION**

For the reasons stated above, TCF respectfully requests that the Motion to Amend the Scheduling Order be denied. If the Court is inclined to grant the CFPB's motion to extend the deadline for moving to amend its complaint, TCF urges the Court to limit any second amended complaint to the claim articulated in this motion to establish good cause, *i.e.*, a claim relating to TCF's sales practices for "swipe negative/settle positive."

Dated: February 22, 2018                         Respectfully submitted,

  /s/ Timothy D. Kelly
Timothy D. Kelly (#54926)
Kristina Kaluza (#0390899)
**DYKEMA GOSSETT PLLC**
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: 612.486.1900
Fax: 855.227.5097
tkelly@dykema.com
kkaluza@dykema.com

John K. Villa
(admitted *pro hac vice*)
Edward J. Bennett
(admitted *pro hac vice*)
Ryan T. Scarborough
(admitted *pro hac vice*)
Bryant Hall
(admitted *pro hac vice*)
Thomas Ryan
(admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: 202.434.5000

Fax: 202.434.5029
jvilla@wc.com
ebennett@wc.com
rscarborough@wc.com
bhall@wc.com
tryan@wc.com

Andrew L. Sandler
(admitted *pro hac vice*)
Andrea K. Mitchell
(admitted *pro hac vice*)
BUCKLEY SANDLER LLP
1250 24th Street, N.W., Suite 700
Washington, DC 20037
Telephone: 202.349.8000
Fax: 202.349.8080
asandler@buckleysandler.com
amitchell@buckleysandler.com

*Attorneys for Defendant TCF National Bank*