**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Consumer Financial Protection Bureau, | Case No. 17-cv-00166-PAM-DTS |
| Plaintiff, | |
| vs. | |
| TCF National Bank, | **[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER** |
| Defendant. | |

This Stipulated Final Judgment and Order ("Stipulated Order") is entered into between Plaintiff (the "Bureau") and Defendant ("TCF"). The Bureau and TCF are collectively referred to herein as "the Parties" to the above-captioned civil action ("Action").

**RECITALS**

1. On January 19, 2017, the Bureau commenced the Action against TCF to obtain injunctive and monetary relief and civil penalties. The First Amended Complaint ("Complaint") alleges violations of Regulation E, 12 C.F.R. § 1005.17, an implementing regulation of the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693, *et seq.*, and of the prohibitions on deceptive and abusive conduct in the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §§ 5531(d)(1), 5536, related to TCF's efforts to obtain Opt-In decisions from customers for its overdraft services for debit card and ATM transactions. Dkt. No. 1.

2. On September 8, 2017, in response to TCF's motion to dismiss, the Court partially granted and partially denied TCF's motion to dismiss. Dkt. No. 89. The Court dismissed the Regulation E claims. The Court refused to dismiss the remaining two

claims, which alleged deceptive and abusive conduct under the CFPA, but limited those claims to customers who opened their accounts on or after July 21, 2011, the Transfer Date established by Congress in the CFPA.

3. On September 22, 2017, TCF filed its answer. Dkt. No. 90. In substance, TCF denied the remaining claims in the Complaint.

4. This Stipulated Order is made in compromise of disputed claims. This Agreement does not constitute an admission by TCF of any facts or liability or wrongdoing, including, but not limited to, any liability or wrongdoing with respect to any allegations that were or could have been raised in this Action. This Agreement also does not constitute an admission by the Bureau that any claim is not well-founded, and nothing in this Agreement should be construed as, or deemed to constitute, approval, sanction, or authorization by the Bureau of any of Defendant's actions or business practices.

5. This Court has jurisdiction over the parties and the subject matter of this action.

6. TCF neither admits nor denies any allegations in the Complaint, except as specified in this Order. For purposes of this Order, TCF admits the facts necessary to establish the Court's jurisdiction over it and the subject matter of this action.

7. The Parties waive all rights to appeal or otherwise challenge or contest the validity of this Stipulated Order.

8. Entry of this Stipulated Order is in the public interest.

## DEFINITIONS

9. "Account" means a demand deposit (checking) or other consumer asset account established primarily for personal, family, or household purposes, as described in Regulation E, 12 C.F.R. § 1005.2(b)(1).

10. "Affected Consumers" are current and former TCF customers who meet either of the following criteria:

   a. New consumers who meet the following:

   i. Account opened at a TCF branch (not online);

   ii. Account opened between July 1, 2010 and December 31, 2013[1];

   iii. Opted In to TCF's Overdraft Service at account opening; and

   iv. Account is not otherwise excluded from receiving restitution by the terms of the approved Restitution Plan; or

   b. Existing consumers who held an account as of June 30, 2010, Opted In to TCF's Overdraft Service by December 31, 2013, and are not otherwise excluded from receiving restitution by the terms of the approved Redress Plan.

11. "Covered Overdraft Fees" refers to fees assessed for paying ATM or one-time debit card transactions that were subject to the requirements for Overdraft Services set forth in 12 C.F.R. § 1005.17.

12. "Effective Date" means the date on which this Stipulated Order is issued.

---

[1] Customers who opened their accounts after December 31, 2013, are not entitled to payment of restitution under this Stipulated Order.

13. "OCC Order" means the Consent Order issued by the Office of the Comptroller of the Currency ("OCC") in the administrative adjudication styled In the Matter of: TCF National Bank, Sioux Falls, South Dakota, No. AA-EC-2018-38.

14. "Opt In" (or "Opted In") means the consumer's affirmative consent to be charged a fee for Overdraft Service for ATM or one-time debit card transactions, as described in Regulation E, 12 C.F.R. § 1005.17(b)(1)(iii).

15. "Overdraft Service" means a service under which a financial institution assesses a fee or charge on a consumer's account held by the institution for paying an ATM or one-time debt card transaction when the consumer has insufficient or unavailable funds in the account.

16. "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against TCF based on substantially the same facts as described in the Complaint.

## ORDER

## I

## Conduct Provisions

17. Consistent with the provisions of Article III of the OCC order, TCF will take the following steps.

18. Opt-In Status Letter: Within 10 days of receiving non-objection to the Restitution Plan from both the Bureau and OCC, TCF will send a letter by United States Postal Service first-class mail, address correction service requested to all current TCF customers who Opted in before May 1, 2015, and include with that letter only the *What*

*You Need to Know About Overdrafts and Overdraft Fees* federal notice. The letter must be submitted for review as part of the Restitution Plan described below.

19. Credit Reporting: Within 30 days of receiving non-objection to the Restitution Plan from both the Bureau and OCC, TCF will contact all consumer reporting agencies to which it furnished information reflecting Covered Overdraft Fees for Affected Consumers within the past seven years and request that the information be corrected to update or remove such information.

20. Closed Accounts: Within 30 days of receiving non-objection to the Restitution Plan from both the Bureau and OCC, TCF will identify all instances where it closed a checking account for an Affected Consumer due to a negative balance created by Covered Overdraft Fees, and will contact the appropriate consumer reporting agencies (*e.g.*, ChexSystems) to whom it furnished such information and request that they correct any such negative reporting in connection with the closed account.

21. TCF and its officers, agents, servants, employees, and attorneys who have actual notice of this Order, whether acting directly or indirectly, may not violate sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531 and 5536, with respect to the Opt-In election and terms and conditions of its Overdraft Service.

22. TCF represents that it currently does not, and TCF will not (i) require its employees to generate a specific number or percentage of Opt-Ins; (ii) cause any employee to suffer adverse consequences for failing to satisfy any such requirement; or (iii) provide employees financial incentives directly or indirectly based on achieving a number or percentage of Opt-Ins.

## II

## Restitution

23. Within 10 days of the Effective Date, TCF will set aside $25 million (twenty-five million dollars) in a segregated deposit account to provide restitution ("Restitution Amount") to Affected Consumers. All $25 million set aside will be paid to Affected Consumers in accordance with the procedures set forth below and further detailed in the Restitution Plan. For the avoidance of doubt, the restitution for the conduct claimed here shall not exceed $25 million as set forth in this Stipulated Order.

24. Within 60 days of the Effective Date, TCF will submit to the Bureau's Mid-West Regional Director ("Regional Director") for review and non-objection a comprehensive written plan for providing restitution consistent with this Stipulated Order ("Restitution Plan"). The Regional Director will have the discretion to make a determination of non-objection to the Restitution Plan or direct TCF to revise it. If the Regional Director directs TCF to revise the Restitution Plan, TCF will make the revisions and resubmit the Restitution Plan to the Regional Director within 15 days. After receiving notification that the Regional Director has made a determination of non-objection to the Restitution Plan, TCF will implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Restitution Plan.

25. The Restitution Plan will:

   a. Provide a mechanism to pay $25,000,000 to Affected Consumers and will ensure that they receive their pro rata share of the Restitution Amount allocated based on the number of Covered Overdraft Fees

        incurred and paid by each Affected Consumer;[2]

    b. Describe the methodology for effectively identifying and providing restitution to Affected Consumers, and identifying the dollar amount of restitution for each Affected Consumer;

    c. Describe how TCF will locate former Affected Consumers whose mail has been returned to TCF as undeliverable, including the reasonable steps to obtain a current address using standard address-search methodologies, and the steps TCF will take with respect to restitution checks that are not cashed after a reasonable period of time; and

    d. Include an email or letter that will accompany the checks or credits provided to Affected Consumers that states TCF is providing restitution because of this Stipulated Order and directs the consumer to the Bureau's website address that contains the Stipulated Order.

26.   Any unclaimed restitution funds will be treated as an Affected Consumer's unclaimed property in accordance with applicable state law, will not revert to TCF, and will not be used for any purpose other than to provide restitution to Affected Consumers.

27.   After completing the Restitution Plan, if the amount of restitution provided to Affected Consumers (inclusive of any funds escheated or that will escheat in accordance with state law) is less than $25 million, within 30 days of the completion of the Restitution Plan, Respondent must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, the

---

[2] Affected Consumers are only entitled to receive restitution for Covered Overdraft Fees that were paid and were not otherwise waived or refunded by TCF.

difference between the amount of restitution provided to Affected Consumers and $25 million.

28.     Defendant will not condition the payment of restitution to any Affected Consumer under this Stipulated Order on that Affected Consumer waiving any right.

## III

## Civil Money Penalty

29.     Under section 1055(c) of the CFPA, 12. U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint, and taking into account the factors in 12.U.S.C. § 5565(c)(3), a civil money penalty of $5 million is assessed against TCF in favor of the Bureau. Under 12 U.S.C. § 5565(c)(4), the Bureau agrees to remit the penalty by $3 million in recognition of TCF's payment to the OCC of a $3 million penalty in connection with the OCC's Order into the same conduct.

30.     Within 10 days of the Effective Date, TCF will pay the net $2 million civil money penalty amount by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

31.     The civil money penalty will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

32.     TCF will not claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid; or seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to this civil money penalty.

33.     TCF will not argue that it is entitled to, nor may TCF benefit by, any offset or reduction of any compensatory monetary remedies imposed in a Related Consumer

Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund ("Penalty Offset"). If the court in any Related Consumer Action grants such a Penalty Offset, TCF will, within 30 days after entry of a final order granting the Penalty Offset, notify the Bureau, and pay the amount of the Penalty Offset to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## IV

## Additional Monetary Provisions

34. In the event of any default on TCF's obligations to make payment under this Stipulated Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

35. TCF shall relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law, and no part of the funds may be returned to TCF.

36. Under 31 U.S.C. § 7701, TCF, unless it already has done so, must furnish to the Bureau its taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

37. Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, TCF must notify the Bureau of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that TCF paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.

38.     Each Party shall bear its own legal and other costs, fees, and expenses incurred in connection with this Action, including those incurred in the preparation and performance of this Stipulated Order. TCF waives any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Stipulated Order.

## V

## Reporting Requirements

39.     TCF will notify the Bureau of any development that may affect compliance obligations arising under this Stipulated Order, including, but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Stipulated Order; the filing of any bankruptcy or insolvency proceeding by or against TCF; or a change in TCF's name or address. TCF will provide this notice, if practicable, at least 30 days before the development, but in any case no later than 14 days after the development.

## VI

## Order Distribution and Acknowledgment

40.     Within 7 days of the Effective Date, TCF must submit to the Enforcement Director an acknowledgement of receipt of this Order, sworn under the penalty of perjury.

41.     Within 30 days of the Effective Date, TCF will deliver a copy of this Stipulated Order to each of its board members and executive officers, and to managers in retail banking at the Regional Manager level and above.

42.     For 5 years from the Effective Date, TCF must deliver a copy of this Stipulated Order to any business entity resulting from any change in structure referred to in Section V, any future board members and executive officers, and to managers in retail banking at the Regional Manager level and above.

43.     TCF will secure a signed and dated statement acknowledging receipt of a copy of this Stipulated Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 et seq., within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

## VII
## Recordkeeping

44.     TCF will create and retain, for at least 5 years from the Effective Date, all documents and records necessary to demonstrate full compliance with each provision of this Stipulated Order, including all submissions to the Bureau, and make such documents and records available to the Bureau upon request.

## VIII
## Compliance Monitoring

45.     Within 30 days of receipt of a written request from the Bureau, TCF will submit additional compliance reports or other requested information to show

compliance with this Stipulated Order, supported by a sworn statement under penalty of perjury.

## IX

## Notices

46. Notices: All notices related to the Stipulated Order shall be in writing and directed as follows:

*If to the Bureau:*

By overnight courier (not the U.S. Postal Service), as follows:

Regional Director, CFPB Midwest Region
230 South Dearborn Street
Suite 1590
Chicago, IL 60604

Assistant Director for Enforcement
Bureau of Consumer Financial Protection
ATTENTION: Office of Enforcement
1700 G Street, N.W.
Washington D.C. 20552; or

By first-class mail to the addresses below and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

Regional Director, CFPB Midwest Region
230 South Dearborn Street
Suite 1590
Chicago, IL 60604

Assistant Director for Enforcement
Bureau of Consumer Financial Protection
ATTENTION: Office of Enforcement
1700 G Street, N.W.
Washington D.C. 20552

*If to TCF:*

Joseph T. Green
TCF National Bank

       200 Lake Street East
       Wayzata, MN  55391
       jgreen@tcfbank.com

       John K. Villa
       Ryan T. Scarborough
       WILLIAMS & CONNOLLY LLP
       725 12th Street, N.W.
       Washington, DC  20005
       jvilla@wc.com
       rscarborough@wc.com

       Andrea K. Mitchell
       BUCKLEY SANDLER LLP
       1250 24th Street, N.W.
       Suite 700
       Washington, DC 20037
       amitchell@buckleysandler.com

## **X**

## **Releases**

47.    The Bureau releases and discharges TCF and each of its current and former parents, subsidiaries, and affiliates, successors and assigns from any and all claims, demands, obligations, damages, actions, and causes of action, direct or indirect, at law or in equity, that occurred before the Effective Date and arise from or relate to TCF's Opt-In practices prior to the Effective Date to the extent the Bureau knows of them as of the Effective Date. The Bureau may use the practices described in the Amended Complaint in future enforcement actions against TCF and its affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with this Stipulated Order, or to seek penalties for any violations of this Order.

48. TCF releases and discharges the Bureau from any and all claims, demands, obligations, damages, actions, and causes of action, direct or indirect, in law or in equity, that occurred before the Effective Date and arise from or relate to this Action.

## XI

## Retention of Jurisdiction

49. All pending motions are hereby denied as moot.

50. This Stipulated Order is governed by, and shall be construed according to, the laws of the United States. The Court will retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Stipulated Order.

Respectfully Submitted:

Dated:  July 20, 2018

/s/ Jack Douglas Wilson
Owen P. Martikan
owen.martikan@cfpb.gov
ph:  (415) 844-9790
Whitney Case
whitney.case@cfpb.gov
ph: (202) 435-7785
Jack Douglas Wilson
doug.wilson@cfpb.gov
ph:  (202) 435-9151
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552

*Attorneys for Plaintiff Consumer Financial Protection Bureau*

/s/ Ryan T. Scarborough
Timothy D. Kelly (#54926)
Kristina Kaluza (#0390899)
**DYKEMA GOSSETT PLLC**
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone:  612.486.1900
Fax:  855.227.5097
tkelly@dykema.com
kkaluza@dykema.com

John. K. Villa (admitted *pro hac vice*)
Edward J. Bennett (admitted *pro hac vice*)
Ryan T. Scarborough (admitted *pro hac vice*)
Bryant Hall (*admitted pro hac vice*)
Thomas Ryan (*admitted pro hac vice*)
WILLIAMS & CONNOLLY LLP

725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: 202.434.5000
Fax: 202.434.5029
jvilla@wc.com; ebennett@wc.com
rscarborough@wc.com;
bhall@wc.com; tryan@wc.com

Andrea K. Mitchell (admitted *pro hac vice*)
BUCKLEY SANDLER LLP
1250 24th Street, N.W.
Suite 700
Washington, DC 20037
Telephone:  202.349.8000
Fax:  202.349.8080
amitchell@buckleysandler.com

*Attorneys for Defendant TCF National Bank*

**SO ORDERED AND ADJUDGED.**

_____          _____
The Honorable Paul A. Magnuson          DATE
United States District Judge